**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**RANDALL E. COOK,**

      **Petitioner,**

**vs.**                                                                   **CV 20-0476 KWR/JHR**

**RICHARD MARTINEZ and
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,**

      **Respondents.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION DENYING AMENDED PETITION FOR HABEAS CORPUS UNDER § 2254

This matter is before the Court on Randall Eugene Cook's *pro se* amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 16]. Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *See, e.g., Abdul-Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 2058 (2009).  All of the issues can be resolved on the record before me and, therefore, an evidentiary hearing is unnecessary. *See, e.g., Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Thacker v. Workman,* 678 F.3d 820, 836 (10th Cir. 2012), *cert. denied,* No. 12-7135, 12A218, 2013 WL 57436 (U.S. Jan. 7, 2013); Rule 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.   I find Cook's arguments to be without merit and recommend denying his petition for habeas corpus.

### I.      BACKGROUND

On April 15, 2015, a jury convicted Cook of two counts of criminal sexual contact of a minor (CSCM) by a person in a position of authority and one count of contributing to the

delinquency of a minor (CDM). [Doc. 21-1, p. 256] (*State v. Cook*, D-1116-CR-201201104-8 (Judgment and Sentence)). These charges arose from Cook sexually touching thirteen-year-old A.M. while also giving and using marijuana and hashish with her. *Id.* at 376, 377 (*State v. Cook*, A-1-CA-34862 (N.M. Ct. App. 2017)). Cook had previously been acquitted of similar charges related to alleged sexual abuse of A.M.'s best friend, E.C. *Id.* 376, 378.

The first instance of sexual abuse occurred when Cook took A.M. to Navajo Lake for her birthday. *Id.* at 376-377. They smoked hashish on the way to and from the lake. *Id.* A.M. was so high that she periodically lost consciousness. *Id.* at 377. While A.M. was high, Cook put his hand under her shirt, rubbed her stomach, and touched her breasts. *Id.* A.M. knew Cook touched her breasts over her shirt, and thought under her bra as well, but was so high she could not be sure. *Id.*

The second instance happened that same month when A.M. spent the night at E.C.'s house. *Id.* Cook watched a movie with A.M. and E.C. *Id.* After A.M. sat next to Cook under a blanket at his request, he rubbed her stomach and moved his hand under her shirt. *Id.* A.M. pushed his hand away, but he later forced his hand under her bra and grabbed her nipple. *Id.* A.M. and E.C. then went to E.C.'s room where A.M. cried on the bed. *Id.* Cook came in, laid down between them, and began apologizing to A.M. while at the same time touching her stomach under her shirt. *Id.*

The state district court found Cook competent to stand trial during his prosecution. *Id.* at 378. In a competency evaluation, clinical and forensic psychologist Dr. Paret found Cook's ability to understand his legal situation and assist counsel to be significantly impaired. *Id.* at 157 (Competency Report), 378. Dr. Paret opined that Cook's delusional beliefs and hallucinations could impair his rational understanding of his legal position. *Id*. At the competency hearing, Dr. Paret testified and the prosecution played a jail call recording where Cook explained the details of his legal strategy. *Id* at 378. The New Mexico Court of Appeals described the jail call:

> During the call, Defendant recounted his earlier conversation with an attorney who no longer represented him at the time of the telephone call. According to Defendant, during his conversation with the other attorney, he discussed in detail litigation strategy for this case, including information Defendant had regarding specific items in evidence and what could be done to suppress evidence so that the charges would be dismissed.

*Id.* at 379. Contrary to Dr. Paret's evaluation, the trial judge found Cook competent to stand trial, noting that the jail call showed Cook had "not only a rational appreciation but a factual understanding of the competency side of the criminal matter." *Id.* at 279. Cook then proceeded to trial. *Id.*

Trial of the allegations involving A.M. took place on April 15, 2015. *Id.* E.C. testified against Cook and the following exchange occurred:

| State: | Would you do anything that others might consider inappropriate with [Defendant]? |
|---|---|
| Defense: | Objection, Your Honor. Leading. |
| Judge: | Overruled. |
| E.C.: | Yes, sir. |
| State: | What would that be? |
| E.C.: | Um, inappropriate things happened, I guess, between us you would say. I don't know quite what you're asking, sir. |

*Id.* Defense counsel objected, the court held a bench conference, and the prosecutor continued:

| State: | Let me rephrase that—the previous question. Did you ever do anything with [A.M.] and [Defendant] that others may consider inappropriate? |
|---|---|
| E.C.: | Yes, sir. |
| State: | What was that? |
| E.C.: | Me and [A.M.] smoked marijuana with him for the first time. |

*Id.* at 379-380. E.C. then testified that she and A.M. often smoked marijuana with Cook, which he supplied. *Id.* at 380. Defense counsel did not object to this rephrased line of questioning. *Id.*

3

The prosecutor and defense counsel spoke with the jury foreperson after the trial. *Id.* at 380. Accounts vary in the details but agree that the foreperson indicated the jury knew Cook potentially had another similar case. *See id.* at 380-381. Based on the conversation, defense counsel filed a motion for a new trial and to set aside Cook's convictions. *Id.*   In his motion, defense counsel stated "the foreperson indicated that there was a belief that there may be a case involving a minor witness . . . The foreperson elaborated that the jury believed this cause number was a lesser case and that . . . Defendant may be involved in another case with similar charges." *Id.*

The State did not recall the "specific sequences of the conversation with the foreperson but [did] recall informing the foreperson that this was not . . . Defendant's only case. Counsel . . . does not recall if this prompted the foreperson's statements or if her statements came first." *Id.* at 381. Nonetheless, the State argued that the statements were immaterial because "there is no evidence or indication that the previous trial for Defendant tainted the jury. During jury selection there was no indication from the panel and ultimately the selected jurors that they had any knowledge of the previous trial." *Id.* at 381.

The district court denied the motion for a new trial and evidentiary hearing at the sentencing hearing on June 1, 2015. *Id.* at 381-82. In response to questioning from the trial judge, defense counsel confirmed that he did not have any information or evidence tending to show that the jurors had extraneous prejudicial information outside of what they learned in the courtroom. *Id.* Defense counsel maintained, however, that uncertainty existed as to whether jurors learned allegedly prejudicial information in the courtroom and possibly allowed it to prejudice their decision. *Id.* at 382. The State reiterated that it did not clearly recall the order of the conversation with the foreperson. *Id.* at 382. The trial court denied the motion and request for a hearing to question the jurors, reasoning that "asking those questions [regarding potential cell phone use during trial] of

the jury is improper unless there is some extraneous prejudicial information" which was lacking here. *Id.* at 383.

The Court of Appeals noted that Cook's appeal characterized the foreperson conversation in vaguer terms than the motion for a new trial. *Id.* Appellate counsel stated that, per the foreperson, the jury knew during deliberations that Cook was "involved in something bigger than this." *Id.*

Cook's state habeas defense team attempted to contact the jury foreperson years later to find out what she recalled of her post-trial conversation with counsel. *Id.* at 311 (*Cook v. State*, D-1116-CR-2012-01104, Amended Petition for Writ of Habeas Corpus). When the foreperson did not respond to mail correspondence, habeas counsel tried an investigator. *Id.* However, the foreperson was not compliant with the investigator, who described the encounter as "very weird" because the foreperson said her post-trial conversation with counsel was "in regard[] to an attempt to gain business by getting them to come into her shop for a haircut." *Id.* at 311, 312. She then claimed she did not know what Cook was charged with nor remember the discussion among jurors. *Id.* She did not provide an affidavit. *See id.*

## II.   PROCEDURAL HISTORY

After the jury returned a guilty verdict and the district court denied Cook's motion to set aside the verdict, Cook directly appealed to the New Mexico Court of Appeals. *See generally id.* at 375-403. The Court of Appeals affirmed in an in-depth opinion addressing all issues. *Id.* The Supreme Court of New Mexico also affirmed. *Id.* at 245. Cook then filed for a writ of habeas corpus in the state district court based on ineffective assistance of counsel; the district court denied relief and the state Supreme Court affirmed the denial. *Id.* at 248-255, 317-322, 418.

On May 18, 2020, Cook filed his first petition under § 2254 for a writ of habeas corpus in federal court. [Doc. 1]. On December 9, 2020, the Court ordered Cook to refile his petition on the

proper form and denied his request for appointed counsel. [Doc. 6]. He complied and refiled the petition, which the Government answered. In its answer, the Government analyzed Cook's claims and determined that some were not exhausted. [Doc. 10, p. 1]. The Government did not object to allowing Cook to voluntarily dismiss his unexhausted claims[1] and proceed solely with exhausted claims. *Id.* at 13.   United States District Judge Kea Riggs referred the matter to me for a recommended disposition, and I recommended that Cook be allowed to amend his petition to delete the unexhausted claims [Docs. 13, 14]. Cook thereafter filed this Amended Petition. [Doc. 16]. Judge Riggs adopted the recommendation and ordered the Government to answer the Amended Petition. [Doc. 19]. The Government attached the transcript of state court proceedings to its answer. [Doc. 29].

Cook raises four grounds for relief, all of which the state courts addressed on the merits. [Doc. 16] First, he argues that the trial court abused its discretion when it did not declare a mistrial after E.C.'s "inappropriate things" comment during testimony, which Cook avers violated Rule 11-403 NMRA. *Id.* at 6. Second, he contends the district court erred in finding him competent to stand trial. *Id.* at 8. Third, he asserts that the district court erred when it denied his motion to set aside the verdict based on the jury foreperson conversation after trial. *Id.* at 9. Finally, Cook argues that his trial counsel was ineffective for failing to obtain an affidavit from the jury foreperson after that conversation. *Id.* at 11.

---

[1] Cook did not exhaust his state court remedies for the following claims, and thus is barred from raising them in federal habeas: (1) trial counsel improperly elicited testimony from a detective relevant to the E.C. charges, and (3) the district court erred by failing to declare a mistrial after a detective testified to finding marijuana pipes at Cook's house, appointing the public defender instead of contract counsel in post-conviction proceedings, and allowing double jeopardy. [Doc. 10, p. 6-7] (enumerating these claims as Grounds 5B-8).

### III.   ISSUES PRESENTED

1. Did the trial court err when it did not declare a mistrial after the "inappropriate things" testimony, considering that the trial court held a bench conference upon defense's objection, the prosecutor rephrased his question, and the defense did not object to subsequent testimony about marijuana use?

2. Did the district court err in finding Cook competent to stand trial, contrary to the examiner's opinion, where a jail call recording revealed that he understood the details of litigation strategy and the competency process?

3. Did the district court err when it denied a motion to set aside the verdict based on counsel's post-trial conversation with the foreperson, where no evidence was produced that the jury was actually exposed to extraneous prejudicial information?

4. Did trial defense counsel err in not obtaining an affidavit from the jury foreperson concerning her post-trial statements to counsel, where her vague statements did not establish any jury taint and she later purported not to remember the jury's discussions?

### IV.   LEGAL STANDARDS

Under the AEDPA, 28 U.S.C. § 2254(d)(1), a federal habeas court may not substitute its "'own judgment for that of the state court.'" *Snow,* 474 F.3d at 696 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 25(2002)). If a state court addresses a claim on the merits, a federal court cannot grant an "application for a writ of habeas corpus" unless the State decision was (1) "contrary to" or an "unreasonable application" of "clearly established" Supreme Court precedent or (2) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The Supreme Court and Tenth Circuit have discussed these

deferential AEDPA standards in detail in many opinions.[2] These standards apply to decisions on the merits regardless of whether the state opinion is conclusory.

Only federal constitutional principles that were clearly established are relevant for habeas purposes.  Thus, this Court's first inquiry is whether the "'principle of federal law invoked by the petitioner was clearly established by the Supreme Court at the time of the state court judgment.'" *Young,* 486 F.3d at 662 (quoting *Turrentine v. Mullin,* 390 F.3d 1181, 1189 (10th Cir. 2004)).

Furthermore, even if a federal habeas court finds that the state court decision was inconsistent with precedent and a violation of constitutional dimension, habeas relief may not issue unless the violation is of a sort that warrants such relief.  *See, e.g., Terry Williams v. Taylor,* 529 U.S. 362, 375 (2000) ("It is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."); *Wilson v. Sirmons,* 536 F.3d 1064, 1073 (10th Cir. 2008) ("If we find that the state court erred, we still must determine whether the error is a structural defect 'in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error" standards.'") (quoting *Arizona v. Fulminante,* 449 U.S. 279, 309 (1991)), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008) [3].

---

[2] *See, e.g., Panetti v. Quarterman,* ___ U.S. ___, 127 S. Ct. 2842, 2858-59 (2007) (and cases cited therein); *Fry v. Pliler,* 551 U.S. 112, ___, 127 S. Ct. 2321, 2326-27 (2007) (same); *Wilson v. Sirmons,* 536 F.3d 1064, 1073-74 (10th Cir. 2008), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008); *House v. Hatch,* 527 F.3d 1010, 1018-20 (10th Cir. 2008), *petition for cert. filed 10/14/08; DeLozier,* 531 F.3d at 1319; *Johnson v. Mullin,* 505 F.3d 1128, 1133-34 (10th Cir. 2007), *cert. denied,* 128 S. Ct. 2933 (2008).

[3]*See also, e.g., Terry Williams,* 529 U.S. at 375 (errors that undermine confidence in fundamental fairness and ineffective assistance of counsel qualify for habeas relief); *Turrentine v. Mullin,* 390 F.3d 1181, 1189 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2544 (2005); *Valdez v. Bravo,* 244 Fed. Appx. 864, 867 (10th Cir. 2007) ("Habeas relief will not be granted for non-structural constitutional error unless the error 'had substantial and injurious effect or influence in determining the jury's verdict'" under *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)), *petition for cert. filed 12/5/07.*

A state court's decision is "contrary to" precedent if it "'arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* at 662-63 (quoting *Torres v. Lytle,* 461 F.3d 1303, 1311 (10th Cir. 2006)).[4]   Conversely, a state court's decision "is not contrary to clearly established federal law even if a state court has no awareness of controlling Supreme Court precedent, 'so long as neither the reasoning nor the result of the state-court decision contradicts [that] precedent.'" *Stevens,* 465 F.3d at 1235 (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)).[5]  In applying the "contrary to" AEDPA standard to "a summary disposition by a state court, [the] focus [is] on its result rather than any reasoning." *Stevens,* 465 F.3d at 1235 (citing *Saiz v. Ortiz,* 392 F.3d 1166, 1176 (10th Cir. 2004), *cert denied,* 545 U.S. 1146 (2005) and *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999)). "However, when applying AEDPA to fully reasoned opinions by state courts, this circuit has not focused solely on the result 'where the state court's explicit ***reasoning*** contravenes Supreme Court precedent.'" *Id.* (emphasis original in quote from *Brown v. Uphoff,* 381 F.3d 1219, 1225 (10th Cir. 2004), *cert. denied,* 543 U.S. 1079 (2005)).

A state court's legal conclusion is an "unreasonable application" of clearly established federal law "only 'if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Young,* 486 F.3d at 663 (quoting *Torres,* 461 F.3d at 1311). The federal court is "precluded

---

[4] In one decision, the Tenth Circuit endorsed the Seventh Circuit's explanation that "the state court decision must be 'at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.'" *Maynard,* 468 F.3d at 671 (quoting *Badelle v. Correll,* 452 F.3d 648, 655 (7th Cir. 2006)).

[5] For example, if a state court does not refer to federal law but applies "a state standard 'equally or more favorable to [petitioner] relative to the federal standard,'" then the federal habeas court will treat "the state court's adjudication of [the petitioner's] federal constitutional claims as an adjudication on the merits and accord its decision AEDPA deference." *Lamb v. Oklahoma Cty. Dist. Ct.,* 229 Fed. Appx. 690, 692-93 (10th Cir. 2007) (quoting *Harris v. Poppell,* 411 F.3d 1189, 1196 (10th Cir. 2005)).

from granting habeas relief where . . . the state court was merely erroneous or incorrect in its application of federal law" and may only grant relief if "convinced the state court's application of federal law goes beyond being erroneous and instead becomes objectively unreasonable." *Snow,* 474 F.3d at 696 (citing *McLuckie v. Abbott,* 337 F.3d 1193, 1197 (10th Cir. 2003)).

A state decision rests on an "unreasonable determination of the facts" if Petitioner shows by "clear and convincing evidence" that the factual finding is erroneous.  18 U.S.C. § 2254(d)(2). Otherwise, the factual findings are presumed correct. *See, e.g., Rice v. Collins,* 546 U.S. 333, 339 (2006); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005); *Allen v. Reed,* 427 F.3d 767, 771 (10th Cir. 2005); 28 U.S.C. § 2254(e)(2).

In some instances *de novo* review of a claim is appropriate even if the state court decided claims on the merits.  AEDPA deferential standards are not applicable if a claim was presented to the state court but was not decided and is not procedurally barred. *See, e.g., Sperry v. McKune,* 445 F.3d 1268, 1274-75 (10th Cir.), *cert. denied,* 127 S. Ct. 597 (2006); *Chrisman v. Mullins,* 213 Fed. Appx. 683, 686 (10th Cir.), *cert. denied,* 127 S. Ct. 3012 (2007). For example, if the state court addressed only one prong of the *Strickland* ineffectiveness test and the federal court must decide the unaddressed prong, then review of that prong is *de novo. See Rompilla v. Beard,* 545 U.S. 374, 390 (2005). Likewise, if the state court does not employ the correct legal standard under § 2254(d)(1), then the federal court reviews the claim *de novo. See Trammell v. McKune,* 485 F.3d 546, 550 (10th Cir. 2007); *Stevens,* 465 F.3d at 1235.

V.     ANALYSIS

### A. <u>Cook is not entitled to habeas relief based on E.C.'s "inappropriate things" testimony</u>

Cook's first ground for relief, that trial court erred in admitting E.C.'s "inappropriate things" testimony and declining to declare a mistrial, fails under §2254(d) and the AEDPA

standards. [Doc. 16, pp. 5, 18]. The New Mexico Court of Appeals was not unreasonable in its application of federal law, nor its determination of the facts, nor its finding the statement was not grossly prejudicial.

### 1. Background

#### a. Cook's Argument

Cook recounts the exchange between the prosecutor and E.C. which elicited the "inappropriate things" comment and defense counsel's objection. [Doc. 16, p. 18]. Cook appears to contend this was prejudicial because E.C. was the plaintiff in the separate sexual abuse case where he was acquitted. *Id.* Cook does not explain why this comment was so prejudicial that it deprived him of a fair trial but appears to assert that the testimony invited the jury to infer that Cook had sexually abused E.C. Cook argues that inference fatally tainted the trial and deprived him of due process.

#### b. Government's Response

The Government's response is two-fold. First, it contends that this argument is an improper state law-based ground for habeas relief "subject to rejection on this basis alone." [Doc. 21, p. 14]. However, the government also address the argument on the merits. *See id.* The Government contextualized the "inappropriate things" comment, pointing out that immediately after a bench conference, the prosecutor rephrased his question and E.C. clarified her response. *Id.* Specifically, she identified the "inappropriate things" she did with Cook (and A.M.) as smoking marijuana and hashish Cook supplied *Id.* at 14-15.  On direct appeal, the New Mexico Court of Appeals likewise interpreted E.C.'s testimony. *Id.*  at 15.

c. *New Mexico Court of Appeals Opinion.*

The New Mexico Court of Appeals scrutinized this claim in a thorough opinion applying

multiple legal principles concerning character and other-act evidence:

> Nothing in E.C.'s testimony makes any reference to those [sexual abuse]
> allegations. On the contrary, the testimony that immediately followed related to the
> multiple times that Defendant has smoked marijuana with E.C. and A.M. Moreover,
> the testimony about smoking marijuana was admissible to prove facts other than
> Defendant's character, because it was relevant not only to the coercion element of
> the CSCM charges but also to the CDM charge. We therefore give leeway to the
> district court in this case and conclude that the court did not abuse its discretion in
> admitting E.C.'s testimony that "inappropriate things happened" without a curative
> instruction.

[Doc. 21-1, p. 390]. The Court of Appeals emphasized that "a mistrial should be exercised with

the greatest caution" and that the trial judge is in the best position to make that determination. *Id.*

at 391. The New Mexico Supreme Court affirmed. *Id.* at 245.

**2. Relevant Law**

Habeas relief is generally not available to address state law evidentiary errors because a

state law issue cannot form the basis for a federal habeas claim. *Smallwood v. Gibson*, 191 F.3d

1257, 1275 (10th Cir. 1999) (internal citation omitted). "Federal courts are not forums in which to

relitigate state trials," and thus their role is "secondary and limited" compared to that of the state

courts. *Barefoot v. Estelle,* 463 U.S. 880, 887, (1983) *overruled in part on other grounds by Lindh*

*v. Murphy,* 521 U.S. 320 (1997). However, a federal habeas court may review an alleged

evidentiary error during a state trial to assess whether "the error was so grossly prejudicial that it

fatally infected the trial and denied fundamental fairness essential to due process." *Williamson v.*

*Ward*, 110 F.3d 1508, 1522–23 (10th Cir. 1997); *see also Martinez v. Hartley*, No. 07-CV-01305-

CMA-KMT, 2010 WL 3170770, at *4 (D. Colo. Aug. 10, 2010) ("In other words, the error must

have influenced the outcome of the trial.") (internal citations omitted). This inquiry involves assessing the reliability and significance of the evidence at trial. *Williamson*, 110 F.3d at 1522–23.

### 3. Federal Habeas Analysis

I conclude that the admission of the "inappropriate things" testimony was not so grossly prejudicial as to deny fundamental fairness. The New Mexico Court of Appeals "fully and completely vetted" the evidentiary issue. *See Martinez v. Hartley*, No. 07-CV-001305-CMA-KMT, 2009 WL 6749588, at *12 (D. Colo. July 14, 2009), *report and recommendation adopted*, 2010 WL 3170770. Cook makes no legal argument that the state appellate decision unreasonably applied federal law, and I find nothing in the appellate decision that contravenes federal law or fundamental fairness and due process.

I also find no error in the Court of Appeals' determination of facts. The Court of Appeals noted that trial judge took appropriate remedial action beginning with a bench conference directly after the objection to the statement. [Doc. 21-1, pp. 379-380]. The bench conference prompted the prosecutor to rephrase the question and E.C. to limit her answer to marijuana use with A.M. and Cook. *Id*. Defense counsel had the opportunity to object to that answer but chose not to and had the opportunity to cross-examine E.C. to undermine her testimony. *Id.*

In sum, I find that Cook has not met his burden of demonstrating that the evidentiary ruling was so prejudicial that rendered the trial fundamentally unfair. *See Williamson*, 110 F.3d at 1522–23. I recommend denial of habeas relief on this basis.

### B. **Cook is not entitled to habeas relief based on being found competent to stand trial.**

Cook's second ground for relief, that the trial court erred in finding him competent to stand trial, fails under §2254(d) and AEDPA review. [Doc. 16, pp. 7, 18]. The New Mexico Court of Appeals did not unreasonably apply federal law nor unreasonably determine the facts in addressing the claim on the merits and upholding the finding that Cook was competent to stand trial.

1. **Background**

   *a. Cook's Argument*

Cook appears to raise a substantive due process claim regarding his competency to stand trial. He asserts he was not competent, relying upon Dr. Paret's assessment that he could not assist counsel. [Doc. 16, p. 18]. Cook downplays the significance of the jail call recordings presented in rebuttal: "[a]ll the state proved that day was, [sic] I do have a factual and rational understanding of my charges." *Id.* at 19. He contends that the State failed to show that Dr. Paret's evaluation was "flawed or incomplete." *Id.* at 19. He also seems to believe that the absence of an evaluation for dangerousness at the state psychological hospital somehow supports finding him incompetent. *Id.*

   *b. Government's Argument*

The Government responds on multiple fronts. First, it highlights the case-specific content of Cook's jail calls, detailed conversations with his former attorney, his own litigation strategy, the implications of being found incompetent, and the legal remedies for incompetency. [Doc. 21, p. 16]. On this basis, the Government noted that the trial court "was not obligated to accept or credit Dr. Paret's expert opinion if it was compelling" under state law. *Id.* The Government also pointed out that in a jail call Cook described the "benefits of having been a victim of past sexual abuse" because it could cause one to "forget things . . . and you don't know you're doing them." *Id.* at 17. Cook recognized the advantage of being found incompetent: "[t]hey can charge me all day long, but they can't convict me." *Id.* The Government endorsed the state appellate court's competency analysis, noting that the Court of Appeals "was left with little—if any—doubt as to Mr. Cook's competency." *Id.* at 18.

c. *New Mexico Court of Appeals Opinion*

The Court of Appeals noted that the law places on the defendant the burden to overcome the presumption of competency. [Doc. 21-1, p. 385]. To that end, it analyzed Cook's jail call recordings as evidence supporting competency. *Id.* at 387. It found significant Cook's detailed memory and understanding of "incidents he believed would assist his case", such as exactly when he bought a blanket, and the implications of legal strategies like a motion to suppress. *Id*. The Court of Appeals concluded that the trial court did not abuse its discretion because finding Cook competent "was not clearly against the logic and effect of the facts and circumstances in this case." *Id.* at 388.

## 2. **Relevant Law**

A criminal defendant has a constitutional due process right to be competent when standing trial. *McGregor v. Gibson*, 248 F.3d 946, 951 (10th Cir. 2001); *see Lay v. Trammell*, No. 08-CV-617-TCK-PJC, 2015 WL 5838853, at *12 (N.D. Okla. Oct. 7, 2015), *aff'd sub nom. Lay v. Royal*, 860 F.3d 1307 (10th Cir. 2017) (collecting cases on competency).

The standard for determining competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). The trial judge must hold a hearing if evidence raises a "bona fide doubt" as to the defendant's competence. *Pate v. Robinson,* 383 U.S. 375, 385 (1966). The "bona fide doubt" inquiry has "no fixed or immutable signs . . . [as] the question is often a difficult one" implicating numerous manifestations and nuances. *Drope v. Missouri,* 420 U.S. 162, 180 (1975).

Competency claims implicate procedural and substantive due process concerns. *Grant v. Royal*, 886 F.3d 874, 892 (10th Cir. 2018). Procedural due process claims arise from failure to hold

a competency hearing when required, while substantive due process forbids an incompetent defendant being tried and convicted. *Id.* at 892-93. Evidentiary standards differ for the two types of claims, with substantive competency requiring a higher level of proof. *Id.* at 893; *McGregor v. Gibson*, 248 F.3d 946, 953-43 (10th Cir. 2001). In a procedural due process claim, the claimant must demonstrate that a reasonable judge should have had a bona fide doubt as to the defendant's competence at the time of trial. *Id.* Evidence of actual incompetency is not required. *Grant*, 886 F.3d at 893. Any evidentiary hearing is limited to the state trial court record, and the proper remedy is a competency hearing. *Id.*

Substantive due process claims require proof of incompetency by a preponderance of the evidence. *Id.* The claimant must show that he actually lacked "a sufficient present ability to consult with his lawyer to a reasonable degree of rational understanding" as well as a rational and factual grasp of the proceedings against him. *Id.* He must also demonstrate that he was convicted during a period of incompetency. *Id.* The evidence must create "a real, substantial and legitimate doubt as to his competency to stand trial." *Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir. 2004). Unlike procedural claims, post-conviction evidence is relevant, and the remedy is a writ of habeas corpus. *Grant*, 886 F.3d at 893. The defendant bears the burden of rebutting the presumption of competency by a preponderance of the evidence. *Medina v. California*, 505 U.S. 437, 446 (1992).

### 3.  Federal Habeas Analysis

Cook does not argue that the Court of Appeals decision was contrary to federal law. To the extent he argues an unreasonable factual determination, he does not provide any evidence creating "a real, substantial and legitimate doubt as to his competency" to stand trial. *See Allen*, 368 F.3d at 1240. Instead, he urges this Court to accept Dr. Paret's ultimate finding of incompetency, which

the trial court and the Court of Appeals considered and rejected. The Government responds with contrary controlling authority and explains the interplay between competency claims and habeas.

Cook has demonstrated no error in the state courts' competency analysis.  Though not determinative of his competency at trial, Cook's ability to navigate the post-conviction direct and collateral appeal processes indicates an absence of persistent intellectual disability. *See Grant*, 886 F.3d at 893. He understood and acted upon direction from this Court to voluntarily dismiss his unexhausted claims advance only the exhausted claims. *See* [Docs. 14, 16]. He has formed coherent arguments on points of law at issue including not only evidentiary and but also competency rules.  Finally, the record includes a revelation of defendant's personal, unedited, and contemporaneous thoughts on his case and its strategy through recordings of his jail calls. Dr. Paret's opinion notwithstanding, I find no error in the trial court's finding of competence and the appellate court's affirmance.

### C. <u>Cook is not entitled to habeas relief based on denial of his motion to set aside the verdict.</u>

Cook's third ground for relief is that the trial court improperly denied his motion to set aside the verdict.  That argument also fails under § 2254(d) and AEDPA standards. [Doc. 16, pp. 10, 20]. Although Cook does not specifically invoke the Sixth Amendment, I infer that his claim arises therefrom.

#### 1. Background

##### *a. Cook's Argument*

In the context of a challenge to the jury's verdict, Cook resurrects E.C.'s "inappropriate things" testimony and the jury foreperson's post-trial statement that the jury may have known of another case or at least other inappropriate sexual activity. [Doc. 16, p. 20]. Cook says that the foreperson told trial counsel that "[the jury] found me guilty because they knew about my other

case #000932[,] that they knew it was the bigger case of the two and it involved the minor witness in this case." *Id.*   Cook also hypothesizes that the jury used their cell phones to research his previous case. *Id.* at 20-21.

    *b.   The Government's Argument*

   The Government labels Cook's argument "doubly speculative" and unsupported by the facts. [Doc. 21, p. 20]. The Government argues that even if the jurors inferred from E.C.'s testimony that Cook was involved in illicit sexual activity E.C., "any such inference would have been permissible as arising not from sources outside the trial but, instead, from testimony offered from the witness stand in a public courtroom where there was full judicial protection of Mr. Cook's right of confrontation, of cross-examination, and of counsel."  *Id.* (internal citation omitted). The Government notes that the "inappropriate things" were limited by later testimony to marijuana smoking. *Id.* at 20-21. Ultimately, the Government underscores the trial judge's role to decide the prejudicial nature and effect of outside evidence. *Id.* at 21.

    *c.   The New Mexico Court of Appeals' Opinion*

   The Court of Appeals found that Cook had not made the necessary preliminary evidentiary showing that extraneous information actually reached the jury; the trial court "was presented with little more than speculation about the foreperson's statements to counsel." [Doc. 21-1, p. 223]. The Court of Appeals found compelling defense counsel's acknowledgment of no actual outside evidence, the "pure speculation" that the jurors may have used their cellphones, and the general uncertainty over whether the prosecutor's remark may have prompted the foreperson's statement. *Id.* at 402-403.

   While Cook argued that he was prevented from this preliminary showing because the trial court refused to hold an evidentiary hearing, the Court of Appeals corrected him: "the preliminary

showing that extraneous information actually reached the jury must be made *before* the district court may order questioning" of the jury. *Id.* at 403. Absent such a showing by affidavits or otherwise, and considering conflicting accounts of the foreperson conversation, the Court of Appeals affirmed the trial court's denial of the motion to set aside Cook's conviction and to hold an evidentiary hearing to question jurors. *Id.* at 404.

### 2.   Relevant Law.

The Sixth Amendment guarantees due process in the form of a fundamentally fair trial by an impartial jury. *Skilling v. United States*, 561 U.S. 358, 377 (2010).   A jury is required to set aside preconceptions, disregard extrajudicial influences, and return the verdict based only upon courtroom evidence. *Id.* at 378. The verdict may be reached only through considering evidence and argument presented in court and not through any outside influences.  *See id.* at 398-99; *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). That said, the Constitution "entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Thus, jurors are not required to be "totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975).

Actual prejudice must exist for a habeas claimant to advance on allegations of juror exposure to extraneous information. *Smith v. Aldridge*, 904 F.3d 874, 887 (10th Cir. 2018) (internal citations omitted). Improper exposure to outside information must be shown to have had a "substantial and injurious effect on the verdict." *Id.* Mere exposure to outside information, without substantial injurious effect, is harmless error insufficient to warrant habeas relief. *Id.*

Further, even if a juror learns information about the matter outside the courtroom, she is not allowed to testify about the effect it had on the jury's deliberations. *United States v. Davis*, 60 F.3d 1479, 1482 (10th Cir. 1995) (addressing the situation where an affidavit attached to the

motion for a new trial notified the trial court that jurors potentially learned outside information).[6] The juror may only testify whether the extraneous information came to the jury's attention; a juror cannot testify to its impact on the jury's mental process. *Id.*; Fed. R. Ev. 606(b). The trial court is uniquely able to assess extraneous prejudicial information claims and decide whether a hearing is warranted. *Davis*, 60 F.3d at 1438. On direct appeal of the trial court's determination, a rebuttable presumption of prejudice applies when the jury was in fact exposed to improper extraneous information, and the burden is on the government to establish (after a hearing) that the exposure was harmless to the defendant. *Id.* at 1484-85. The most common way of showing harmless extraneous contact is through "overwhelming evidence if of the defendant's guilt." *Id.* at 1485 (internal citations omitted).

### 3. Federal Habeas Analysis.

Cook's argument focuses on the post-trial conversation trial counsel had with the jury foreperson where the foreperson said that Cook was involved with "something bigger" than this case. *See* [Doc. 16, pp. 20, 21].  However, Cook does not resolve the evidentiary deficiency identified by the Court of Appeals, and still fails to offer any evidence that extraneous evidence *actually reached* the jury. *See* [Doc. 21-1, p. 403]. Nor does Cook allege that insufficient voir dire, jury instruction, or publicity control caused or contributed to improper juror exposure. Essentially, Cook asks this Court to redo the Court of Appeals analysis, but in his favor, yet he makes no showing that the Court of Appeals unreasonably applied federal law or unreasonably determined the facts.

---

[6] Examples of actual prejudice include jurors improperly considering dictionary definitions after the dictionary had been excluded as evidence and jurors seen reading a newspaper article containing prejudicial information about the defendant. *Davis*, 60 F.3d 1484, n.4.

Critically, the presumption of prejudice that arises from improper jury exposure to extraneous information on direct appeal is generally not applicable in habeas proceedings within our circuit. *Smith v. Aldridge*, No. CIV-12-473-C, 2017 WL 2274474, at \*18 (W.D. Okla. Mar. 9, 2017), *report and recommendation adopted*, No. CIV-12-473-C, 2017 WL 2274488 (W.D. Okla. May 24, 2017), *aff'd*, 904 F.3d 874 (10th Cir. 2018) (citing *Malicoat v. Mullin*, 426 F.3d 1241, 1250 (10th Cir. 2005)).   The relevant inquiry on collateral review is whether the extraneous information had "substantial and injurious effect" on the verdict. *Id.* (citing *Matthews v. Workman*, 577 F.3d 1175, 1181-82). Reviewing the record and the Court of Appeals decision, there no indication that the jury based their verdict upon anything other than the evidence presented at trial.

First, Cook fails to show that the jury understood E.C.'s testimony as his sexual involvment with other minors. Just before E.C. testified to "inappropriate things," she described being friends with A.M. for six to seven years, Cook being her mother's boyfriend, and having fun with Cook while fishing, camping, and watching movies. [Doc. 21-1, p. 10]. Right after she stated "inappropriate things" happened, the prosecutor rephrased his question to ask if E.C. did anything inappropriate with Cook and others. *Id.* at 11. E.C. responded that she and A.M. smoked marijuana for the first time with Cook, and many more times thereafter. *Id.* E.C.'s testimony does not imply that Cook also committed unlawful sexual activity with E.C.

However, even if the jurors inferred that Cook had charges involving E.C., that inference would have arisen strictly from courtroom testimony subject to Cook's confrontation and cross examination rights. *See Matthews*, 577 F.3d at 1181. Cook was not guaranteed a perfect trial, nor ignorant jurors who abandoned their common sense when they entered the courtroom. *See Delaware*, 475 U.S. at 681; *Murphy*, 421 U.S. at 799-800. I also note that the trial judge specifically instructed the jury not to discuss the case before recesses, and particularly emphasized this

instruction after the portion of E.C.'s testimony including the "inappropriate things" comment. *See* [Doc. 21-21, pp. 25, 39].

Second, there is no indication that the jurors consulted cell phones during Cook's trial. The theory that they did arose during oral argument on the motion to set aside the verdict and is no more than speculation:

> "[B]ecause there were comments made during the trial that *alluded to or potentially alluded to* something else that *if [the jury] had a break or during lunch if that was anything* that came up. We *don't know* that . . . [but] empaneling the jury against to ask those questions *might prove* to be worthwhile."

*Id.* at 204 (emphasis added). The trial judge invoked NMRA, Rule 11-606(B) to deny that request because juror questioning is improper unless extraneous prejudicial evidence actually exists. *Id.* The Court of Appeals affirmed because Cook failed to make "a preliminary showing—with competent evidence—that extraneous information actually reached the jury." *Id.* at 403. At this stage, years after the original trial, if such extraneous evidence existed, it would have emerged. *See Broils v. Simmons*, 130 F. App'x 215, 217 (10th Cir. 2005). Cook's efforts to find supporting evidence appear to have ended with the foreperson's noncompliance with habeas counsel's investigator. [Doc. 21-1, p. 313].

Even if improper extraneous information reached the jury, Cook has not shown prejudice. Had the trial judge permitted questioning, jurors would only have testified whether extraneous information reached the jury. *See Davis*, 60 F.3d at 1479. The effect of extraneous information on deliberation would have been beyond the scope of the inquiry. *See id.* Without a presumption of prejudice on habeas review, Cook has the burden to present other reliable evidence that outside information had a substantial and injurious effect on the verdict. *See Smith*, 2017 WL 2274474, at *18 (citing *Matthews*, 577 F.3d at 1181-82). Cook has not shown any evidence that the jury convicted him because they learned of his case with E.C. from an outside source.

**D.  Cook is not entitled to habeas relief based on ineffective assistance of counsel.**

Cook's fourth ground, ineffective assistance of counsel, is related to ground three insofar as it alleges trial counsel was ineffective for not obtaining an affidavit from the jury foreperson. [Doc. 16, pp. 10, 20]. Cook presented this argument to the trial court, which denied relief under the *Strickland* standard and was upheld. *See* [Doc. 21-1, pp. 336-341]. On habeas review, the controlling inquiry is "whether the state court's application of *Strickland* was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). I find that it was not unreasonable.

**1.  Background**

*a.  Cook's Argument*

Cook argues that trial counsel was ineffective because he did not secure a written affidavit from the juror foreperson following the post-trial conversation that implied jurors knew of Cook's involvement in another similar situation. [Doc. 16, p. 21]. Cook alleges that the foreperson lied to his investigators "from start to the very end of the conversation." *Id.* Cook argues that the trial court, in denying his request for an evidentiary hearing, abused its discretion. *Id.* at 22. Cook now contends that denial of an evidentiary hearing with the foreperson was unfair. *Id.*

*b.  Government's Argument*

The Government says that the trial court properly decided Cook's ineffectiveness claim on the "deficient-performance prong, having found that the foreperson's comments were so vague that they did not present a sufficient reason to believe extraneous information had reached the jury." [Doc. 21, p. 21]. After explaining the applicable legal standards, the Government emphasizes that E.C.'s testimony of marijuana use following her "inappropriate things" comment contextualized the comment such that any ambiguity would naturally refer to the illicit drug use. *Id.* at 24. Moreover, even if an evidentiary hearing had been held, it likely would not have been

fruitful nor favorable to Cook considering the jury foreperson denied any such conversation to habeas counsel's investigator. *Id.*

The Government also contends that Cook's argument fails under *Strickland*'s second "prejudice" prong, not directly addressed by the trial court. *Id.* The Government says that Cook fails to show that the foreperson would have testified differently at a hearing or new trial or that the trial court would be inclined to grant him a new trial after such theoretical foreperson testimony. *Id.* Rather, the trial court "was fully informed of the facts of Mr. Cook's trial and was well aware of the evidence presented and the testimony elicited." *Id.* at 25.

      *c.  Trial Court Order*

Chief District Court Judge Karen Townsend's order aptly disposed of Cook's habeas arguments at the state level. *See* Doc. 21-1, p. 336-341. Judge Townsend distilled Cook's argument:

> Petitioner seems to assert that trial counsel failed to investigate whether extraneous information reached the jury during deliberation, that counsel failed to allege in the *Motion to Set Aside Conviction* that extraneous information reached the jury, and that counsel failed to present the foreperson's affidavit of live testimony at the hearing on the *Motion to Set Aside Conviction.* The alleged failures rest on the law that it is only if extraneous prejudicial information (rather than a jury's deliberative process) reaches a jury that the jury's verdict may be impeached. *Kilgore v. Fuji Heavy Industries Ltd.*, 2010-NMSC-40, ¶¶ 11-13; 148 N.M. 561.

*Id.* at 339.

Judge Townsend identified and applied the *Strickland* standard requiring Cook to show not only that trial counsel was not reasonably competent, but also that the result would have been different had counsel not been incompetent. *Id.* She found that trial counsel did not perform deficiently because the foreperson's post-trial comments were "so vague" that a competent attorney would not have believed extraneous information reached the jury on that basis. *Id.* ("They do not even hint that the jury's belief [of another similar case] had its genesis in information

acquired from [an extraneous source]"). Rather, Judge Townsend reasoned that the jury more plausibly (and permissibly) inferred that Cook had similar charges based on the testimony of the two minor females. *Id.* at 340. Thus, Judge Townsend concluded that trial counsel was not deficient in foregoing an investigation into the foreperson's comments as they were irrelevant to ineffective assistance. *Id.*

### 2. Relevant Law

A federal court must afford the state court "deference and latitude that are not in operation" when the state court itself applies the *Strickland* standard. *Harrington*, 562 U.S. at 101. It must also take care not to equate the unreasonableness standard of *Strickland* with the independent standard of § 2254(d). *Id.* at 105. While "surmounting *Strickland*'s high bar is never an easy task . . . establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because both *Strickland* and § 2254(d) are "highly deferential and when the two apply in tandem, review is doubly so." *Id.* (internal citation omitted). Thus, the ultimate inquiry is whether any reasonable argument exists that "counsel satisfied *Strickland's* deferential standard." *Id.*

It is "past question" that the *Strickland* rule qualifies as "clearly established Federal law" for purposes of § 2254(d). *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000). Both components of *Strickland* must be met to show a violation of the Sixth Amendment right to counsel. *Id.* First, the defendant must demonstrate that his counsel's performance was deficient. *Id.* Deficient performance means "errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, the defendant must show that his counsel's deficient performance prejudiced him. *Id.* Prejudice requires error so serious that it deprived the defendant of a fair trial "whose result is reliable." *Id.* (internal citation omitted). This means, but for counsel's

unprofessional errors, the proceeding would have had a different result. *Id.* To find ineffectiveness requires a showing that counsel's representation fell below "an objective standard of reasonableness." *Id.*

The Tenth Circuit has addressed the situation where a habeas claimant, Broils, alleged that his trial attorney was ineffective for failing to investigate alleged juror misconduct. *See generally Broils*, 130 F. App'x at 215-17. Broils asserted that jurors communicated with the victim's family during trial breaks. *Id.* at 217. *Id.* The state habeas petition alleged that his attorney failed to investigate this supposed juror misconduct. *Id.* The state appellate court denied relief, relying on *Strickland's* second prong: Broils "was not prejudiced by an alleged failure to investigate, since by the time of his state collateral attack, two years later, he had still been unable to establish any factual support for his claim." *Id.* The Tenth Circuit found that the state appellate decision did not unreasonably apply *Strickland*, reasoning that Broils would have already established evidence supporting the juror misconduct claim if it had any merit. *Id.*

### 3. Federal Habeas Analysis

Under the strictures of § 2254(d) review, I find that reasonable arguments do exist that counsel satisfied the *Strickland* standard. *See Harrington*, 562 U.S. at 131. Moreover, I find that the state court's application of the *Strickland* standard was not unreasonable. *Id.* at 101.

Judge Townsend disposed of Cook's ineffective assistance claim on the deficiency prong of *Strickland* and did not directly address the second prejudice prong. [Doc. 21-1, pp. 320]. I will therefore not assess the merits of Judge Townsend's analysis because Cook did not clear the § 2254(d) hurdle of unreasonable legal application or factual determination. *See Harris v. Sharp*, 941 F.3d 962, 978 (10th Cir. 2019). However, I will address the prejudice prong because the state court did not adjudicate it on the merits. *See id.* at 975

I agree with the Government's analysis. The prejudice prong requires Cook to show that but for trial counsel's failure to secure an affidavit from the foreperson, the result of his trial would have been different (he would not have been convicted). The Government points out that Cook's prejudice argument requires several logical leaps. *See* [Doc. 21, p. 24]. First, it assumes the trial court would have held an evidentiary hearing if the foreperson had provided an affidavit. *See id.* The second assumption is that the hearing would have rendered testimony favorable to Cook. *See id.* The third assumption is that the trial court would have set aside the verdict and ordered a new trial based on the testimony. *See id.* Without more, the Court cannot connect the dots to deduce prejudice from the lack of an affidavit. In context, the foreperson's ultimate noncompliance with habeas counsel's investigator discourages an expectation of merit to the prejudice prong. *See* [Doc. 21-1, p. 313].

Finally, even assuming trial counsel was deficient, there is overwhelming evidence of Cook's guilt sufficient to render the argued error harmless and not prejudicial. *See Davis*, 60 F.3d at 1485. A.M. described Cook rubbing her stomach, moving his hand under her bra, and grabbing her nipple (after she pushed his hand away), all while she, E.C., and Cook watched a movie. [Doc. 21-1, pp. 17, 18]. A.M. also testified that Cook made crude "jokes" about her virginity, her body, and being in a pornographic movie together. *Id.* at 19, 20. She also recounted going to a lake with Cook to smoke hash, which made her so high that she was "in and out" of consciousness and sat between Cook's legs to remain stable. *Id.* at 24. While sitting between his legs, Cook rubbed her breasts over her shirt, and possibly under her bra but she was too high to recall. *Id.* at 23-24. Similarly, E.C. described hearing Cook unfastening A.M.'s bra while Cook lay between them, and E.C. "knew what was happening." *Id.* at 12, 13.

This direct, descriptive testimonial evidence from the victim, corroborated in part by another witness, both subject to confrontation and cross-examination by defense counsel, qualifies as overwhelming evidence of Cook's guilt. Thus, even if Cook's trial attorney was deficient in not getting an affidavit from the foreperson, that deficiency is not prejudicial in the face of such compelling evidence. I agree that Cook's failure to allege, "much less show," that the foreperson would have provided a detailed account of Cook's trial and surrounding events had she testified at an evidentiary hearing is fatal to the ineffective assistance claim. *Id.* at 24.

Therefore, after reviewing *Strickland*'s prejudice prong de novo on the merits, I find that Cook cannot show that the result of his trial would have been different if not for his counsel's failure to obtain an affidavit. Any actual error is harmless. Under the "doubly" highly deferential standards of *Strickland* and the AEDPA, Cook is not entitled to federal habeas relief for ineffective assistance of counsel. *See Harrington*, 562 U.S. at 105.

### E. A Certificate of Appealability should be denied.

I further recommend that a certificate of appealability ("COA") should be denied. The standard governing the issuance of a COA asks "whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis,* 137 S. Ct. 759,773 (2017) (internal citation and quotation omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a petitioner to "demonstrate that reasonable jurists would find the Court's assessment of his constitutional claim deniable or wrong."). In the instant matter, I conclude that Cook failed to show that reasonable jurists would find my assessment of Cook's claims for habeas relief under the AEDPA and § 2254(d) debatable or wrong. Therefore, I find that a COA is inappropriate and recommend that the Court deny Cook a COA.

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I respectfully **RECOMMEND** that Cook's Amended Petition under § 2254 for Writ of Habeas Corpus [Doc. 16] be **DENIED** because Cook has not shown that the state courts' rejection of his claims on the merits failed to comply with the applicable AEDPA and § 2254(d) standards. I further recommend that a Certificate of Appealability be **DENIED**.


_____

JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE


**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**